UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bobbie Lesheone Kelly, | ) | C/A No. 5:20-cv-2741-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Kilolo Kijakazi, Acting Commissioner of | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

pursuant to the Social Security Act ("the Act"). Having carefully considered the parties'

submissions and the applicable law, the court affirms the Commissioner's decision for the reasons

discussed herein.

I.      Relevant Background

A.      Procedural History

This appeal concerns Plaintiff's applications for DIB and SSI benefits under Title II and

Title XVI of the Act, 42 U.S.C. §§ 401-433 in which she alleges a disability onset date of

December 19, 2016. Tr. 20, 183-85, 202. Plaintiff's applications were denied initially, Tr. 88-89,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.

and upon reconsideration, Tr. 121-22, and in January 2018 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 138. The administrative hearing was held on April 11, 2019. Tr. 35-61. On May 31, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act. Tr. 20-29. On June 10, 2019, Plaintiff, through counsel, requested review of the ALJ's decision. Tr. 182. After granting Plaintiff's request for additional time, Tr. 7, the Appeals Council denied Plaintiff's request for review, Tr. 1-6. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. Tr. 1. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on July 27, 2020. ECF No. 1.

B.    Plaintiff's Background

Born in April 1977, Plaintiff was 39 years old as of her alleged disability onset date of December 19, 2016, and 42 years old at the time of the administrative hearing. Tr. 183. In her April 12, 2017, Disability Report-Adult form Plaintiff indicated that she completed her GED in 1993, did not attend special-education classes, and had not completed specialized job training[2] or vocational school. Tr. 203. Plaintiff indicated that her past relevant work ("PRW") included being a cosmetologist from May 2013 through December 2016 and being a machine operator in a manufacturing plant from February 2003 through January 2011. Tr. 203. In her Disability Report Plaintiff indicated she stopped working on December 19, 2016, because of her conditions, which she listed as fibromyalgia, chronic pain, anxiety, brain fog, depression, migraines, foot pain, speech problems due to her illness, constant pain, and tingling in her hands and feet. Tr. 202. Plaintiff indicated that she was 5'1" tall, weighed 196 pounds, and her conditions caused her pain or other symptoms. *Id.* In a Disability Report-Appeal dated August 23, 2017, Plaintiff indicated

---

[2] At the administrative hearing Plaintiff indicated she had obtained a certificate or license as a cosmetologist. Tr. 44.

her reported medical conditions had not changed nor did she have any new physical or mental conditions since the time she had last told the Agency about her conditions. Tr. 237.

C.     The Administrative Proceedings

Plaintiff's administrative hearing was held on April 11, 2019, in Mauldin, South Carolina before ALJ Thaddeus J. Hess. Tr. 35. Plaintiff appeared with counsel and testified; Vocational Expert ("VE") Rock Weldon[3] also appeared and testified. *Id.*  After discussion between the ALJ and Plaintiff's counsel regarding potential new medical records, the witnesses were sworn in. Tr. 39-40.

1.     Plaintiff's Testimony

In response to questions from the ALJ Plaintiff described her past work as a machine operator with Polydeck Screen Corporation. Tr. 41. She said the company was making sifting panels for mining companies; she noted she may have lifted up to 50 pounds and was on her feet all day. Tr. 41-42. The ALJ also confirmed that Plaintiff did hair and nails as a cosmetologist. Tr. 43.

In response to questions from her attorney, Plaintiff indicated she lived with her 14-year-old daughter and her 26-year-old son. Tr. 43. Plaintiff said her son worked outside the home and was responsible for the bills. Tr. 43-44. Plaintiff indicated that in 2017 she was working as a cosmetologist about two hours per week. Tr. 44. She said she would stand to do hair, but she would have to sit down and rest when she got pain in her biceps, hands, and knees. Tr. 44. Plaintiff said it would take her at least 30 minutes up to an hour and a half to complete a hairstyle because of the breaks; she said she lost a lot of clients that way. Tr. 44-45. Plaintiff confirmed she was not working full-time in 2017. Tr. 45.

---

[3] The transcript identifies the VE as Rock Weldon, Tr. 35; the VE's resume indicates his name is Karl S. Weldon, Tr. 264.

When asked what medical reasons made her unable to work, Plaintiff indicated she had shoulder pains, that the back of her shoulders hurt and that lumps appeared on her shoulders and that her biceps, arms, hands, and knees hurt. Tr. 45. Plaintiff indicated her hands "cramp up, and they want to deform themselves." Tr. 45. Plaintiff says that when she gets out of bed in the morning it feels like she is "stepping on pins and needles all day long" and that she has that sensation in her joints for "at least two hours." Tr. 45. Plaintiff says her knee pain has gotten progressively worse over the past five years and that she can only stand on that (unspecified) knee for three-to-five minutes at the most. Tr. 45-46. Plaintiff indicates that, in 2016 and 2017, when she was self-employed, she could stand for "like ten minutes" at a time before needing to take a 15-20 minute break. Tr. 46. Plaintiff said her knees caused her pain every day. Tr. 46.

Plaintiff indicated the pain she had in her upper extremities was an eight-out-of-ten, worse than the six-to-seven she assigned to her lower extremities. Tr. 47. Plaintiff described her problem with her shoulders as having lumps that appear on top of the right and left shoulder blades and bad spasms all of the time. Tr. 47. She described the pain as "dull sharp pains that's constantly stabbing [her] all day long." Tr. 47. Plaintiff said the pain limited the use of her shoulders and arms, indicating she has problems "lifting, holding stuff, grabbing stuff." Tr. 47. When asked about issues raising her arms and what direction of lifting gave her problems, Plaintiff explained it was "[m]ostly straight up, and straight out." Tr. 48. She said those directions were the worst, but she also had problems raising her arms to the side or in front of her. Tr. 48. Plaintiff says that when she tries to grasp things they often just slip through her fingers. Tr. 48. Plaintiff says she also has serious pain from trying to manipulate things. Tr. 48-49. Plaintiff said she previously had injections to her shoulders. Tr. 49. Plaintiff estimates she could lift three to five pounds. Tr. 49.

Plaintiff said she was 5'1 and weighed 200 pounds the last time she had been to a doctor about one month prior. Tr. 50. Plaintiff said she used to weigh 150 or 160 but had put on weight since she was in her 30s. Tr. 50.

Plaintiff said her daily activities depended on her pain level. Tr. 50. If she had no pain, Plaintiff said she "might can function a little bit," getting out of bed, brushing her teeth, and washing her face. She would then have to sit down and build up strength to do something else. Tr. 50. Plaintiff explained that she would have to build up strength to walk outside and that when she would walk outside she would have shortness of breath and pain. Tr. 51. Plaintiff said she could no longer do housework because things like washing dishes and sweeping would take "everything out of [her]." Tr. 51. Plaintiff said she would have to stop and rest after doing any housework for two minutes. Tr. 51.

Plaintiff said she took Gabapentin for fibromyalgia pain, as well as Naproxen, Tizanidine, Lyrica, and a topical cream. Tr. 51-52. Plaintiff said she took fluoxetine for depression. Tr. 52. She said she took Sumatriptan for her "real bad migraines." Tr. 53. Plaintiff said the medications gave her some relief for an hour and a half to two hours.. Tr. 53. Plaintiff indicated she experienced side effects including seeing flashing lights, dizziness, forgetfulness, and confusion. Tr. 53. Regarding her migraines, Plaintiff said they lasted all day despite the medication. Tr. 54.

Plaintiff said her son took care of the yard, and that her son and daughter helped with the cooking and the housework. Tr. 54. Plaintiff said she had not driven in four years. Tr. 54. Plaintiff said her son usually did the grocery shopping. Tr. 55. Plaintiff said if she did have to go grocery shopping she would have to use one of the electric carts at the store. Tr. 55. Plaintiff said she was too depressed to socialize outside of her home. Tr. 55. She explained she was sad all the time and cried because she was unable to function like she used to. Tr. 55.

The ALJ had no further questions of Plaintiff. Tr. 55-56.

2.    VE Testimony

VE Weldon testified and described Plaintiff's PRW as a machine operator as medium, SVP of 2, Dictionary of Occupational Titles ("DOT") 556.3821-018. Plaintiff's job as a cosmetologist was described as light, SVP of 6, DOT 332.271.010. Tr. 57. The ALJ asked the VE to assume a person of Plaintiff's age, education, and work experience with the residual functional capacity ("RFC") to perform sedentary work, which would entail lifting or carrying 10 pounds occasionally and five pounds frequently, standing and walking two hours out of an eight hour day and sitting for six hours out of an eight hour day. Tr. 57. This hypothetical individual would perform sedentary work with the following additional restrictions:

> never climbing a ladder, rope, or scaffold. Never for crawling. Occasional for climbing a ramp, or stairs, as well as occasional for balancing, stooping, kneeling, and crouching. All of those are occasional. Occasional overhead reaching bilaterally. Avoid concentrated exposure to vibration, and avoid concentrated exposure to the workplace hazards such as unprotected heights, and moving machinery.

Tr. 57-58. Characterizing the above as "hypothetical one," the ALJ asked the VE whether such an individual could perform either of Plaintiff's prior jobs. Tr. 58. The VE sought clarification that the ALJ had not indicated the work had to be unskilled, and the ALJ confirmed that to be the case but noted the hypothetical was at the sedentary level. Tr. 58. The VE affirmed that would preclude past work, but indicated there were other jobs with those limitations that included: Inspector, DOT 726.687-050, 362,300 jobs available in the national economy; circuit board assembler, DOT 726.687-038, 434,000 jobs available in the national economy; and call-up operator, DOT 237.687-186, 726,000 jobs available in the national economy. Tr. 58. The ALJ asked whether a "call-up operator" was the same as a "call-out operator," and the VE indicated, "I believe the tasks are the same; it's very similar, Your Honor." Tr. 58-59. The VE indicated the climbing requirement is

6

based on his own experience as the DOT does not differentiate between climbing ladders, ropes, scaffolds, ramps, and stairs. Tr. 59. Regarding reaching, the following colloquy ensued:

> Q [ALJ]: Anything else different [regarding the DOT]? Is reaching—is it just general reaching, or does it cover—I don't think it covers laterally in front, or overhead, right, in the DOT?
> A [VE]: It does not.
> Q: Okay. Is that based on your experience?
> A: It is. I believe these jobs are performed at a work bench, and, so they would not require overhead reaching.

Tr. 59.

For hypothetical question number two, the ALJ asked the VE whether any jobs would be available "if we are expected to miss for a variety of reasons, but expected to miss three days of work per month[.]" Tr. 59. The VE indicated there would be no jobs available because he did not believe there were "employers who would allow that many absences on a monthly basis." Tr. 59.

For hypothetical number three, the ALJ added to hypothetical number one "occasional use of the hands for handling and fingering[.]" Tr. 59-60. The VE indicated there would be no jobs available under that hypothetical situation. Tr. 60.

Plaintiff's counsel then asked the VE what the impact would be on the jobs identified if hypothetical number one "had the handling and fingering bilaterally at frequent [] and had all reaching as occasionally bilaterally[.]" Tr. 60. The VE indicated there would be no jobs. Tr. 60. He continued, "At the sedentary level, I would say reaching is probably the second most important characteristic besides handling." Tr. 60. The VE indicated his answer was consistent with the DOT and its companion publications. Tr. 60.

There being no further questions, the hearing was closed. Tr. 60-61.

II.    Discussion

   A.    The ALJ's Findings

In his June 5, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.  The claimant has not engaged in substantial gainful activity since December 19, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: fibromyalgia, ophthalmic migraine headaches, obesity, history of bilateral shoulder arthroscopies, and lumbar and cervical facet arthritis (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(c) and 416.967(c) except lift and carry 10 pounds occasionally and five pounds frequently; stand and walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; never crawl or climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and climbing ramps and stairs; occasional overhead reaching bilaterally; and avoid concentrated exposure to vibration and workplace hazards such as unprotected heights and moving machinery.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on April 1, 1977 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills in not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 19, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 22, 24-25, 27-29.

B.  Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §

9

the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b), § 416.920 (a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable

---

404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii), § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526, § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges the ALJ erred by (1) failing to account for her documented reaching-related restrictions in determining her RFC, and (2) failing to resolve conflicts between the VE's testimony and the DOT and companion publications. Pl. Br., ECF No. 17; Reply, ECF No. 21. The Commissioner argues that substantial evidence supports the ALJ's determination. Def. Br., ECF No. 20.

1.   The ALJ's RFC Assessment

The ALJ found Plaintiff had the RFC to perform sedentary jobs with certain limitations. Tr. 25. The portion of the RFC with which Plaintiff now takes issue is the ALJ's finding that Plaintiff would be limited to "occasional overhead reaching bilaterally." Pl. Br. 6. Specifically, Plaintiff argues, "the ALJ should have included a limitation for all reaching, not just overhead reaching, and if the restriction was to be limited to only overhead reaching, then an explanation on why all reaching was not limited should have been included." *Id.* The Commissioner argues that "ample evidence" supports the ALJ's RFC lifting restriction and noted the ALJ's consideration of Plaintiff's longitudinal treatment history, clinical presentations, shoulder x-rays, medical opinions, and Plaintiff's activities of daily living ("ADLs"). Def. Br. 10-11.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546, 416.946. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to

meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(3) and (4), 416.945(a)(3) and (4). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

At Step Three of the sequential evaluation process the ALJ determined Plaintiff had the RFC to perform sedentary work with certain additional limitations. Tr. 25. As noted above, Plaintiff takes issue only with the limitation to "occasional overhead reaching bilaterally," arguing the limitations on her reaching should not have been limited to overhead reaching. The ALJ stated that in making his RFC determination, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." Tr. 25.

As part of his RFC determination, the ALJ considered Plaintiff's testimony, the objective medical findings, and medical source opinions. Tr. 28-32. The ALJ discussed Plaintiff's allegations in her Function Report and hearing testimony regarding her physical limitations, Tr. 25, and the ALJ then discussed the medical evidence related to Plaintiff's physical impairments including physical examinations showing "largely benign findings," sometimes-decreased range of motion and tenderness in the neck, low back, and shoulders, and a resected distal clavicle, Tr. 26 (citing to medical records).

The ALJ also discussed results of a April 2014 consultative exam by Lary Korn, D.O.[5] that found Plaintiff to have "normal range of motion in the low back, shoulders, and extremities[,]" with "mildly diminished strength resistance with external rotation of the shoulders with slight atrophy on the right rotator cuff. (2F)" Tr. 26. Later in the RFC analysis the ALJ again referenced the April 2014 consultative examination by Dr. Korn. Tr. 27. The ALJ gave "some weight" to Dr. Korn's opinion that Plaintiff had "limited ability to perform vigorous overhead manipulations and is better suited for manipulations that can be performed closer to waist level that do not require torquing, twisting, and yanking ((2F/3)." Tr. 27. The ALJ explained that "[f]or reasons explained above," he limited Plaintiff to "occasional overhead reaching in light of shoulder pain. Lesser weight is afforded to the remainder of Dr. Korn's opinion suggesting that the claimant requires additional manipulative restrictions because that portion of his opinion is too restrictive in light of the claimant's robust activities of daily living and largely stable physical functioning noted throughout the record." Tr. 27.

The ALJ also discussed a July 2017 consultative exam, in which W. Russell Rowland, M.D. reviewed the April 2014 consultative examination report and examined Plaintiff on July 20, 2017. Tr. 26 (discussing Dr. Rowland's Report, ex. 5F, found at Tr. 304-10). The ALJ described portions of Dr. Rowland's findings, noting Plaintiff's "5/5 strength in the upper extremities including the shoulders." Tr. 26. The ALJ noted Dr. Rowland had not offered an opinion but that "some weight" was afforded to Dr. Rowland's exam findings, "which support mild symptomology." Tr. 26. The ALJ indicates he is limiting Plaintiff to "occasional overhead

---

[5] The court notes that Dr. Korn's October 2014 consultative examination, found at Tr. 282-85, predates the period at issue; Plaintiff's alleged onset date in the applications under consideration is December 19, 2016.

bilaterally in light of her history of bilateral shoulder arthroscopies." Tr. 26.[6]

The ALJ also notes the opinions of the State agency medical consultant, giving "some weight" to the consultant's opinion on reconsideration that Plaintiff should be limited to light work with manipulative restrictions. Tr. 27 (referencing exs. 6A, available at Tr. 91-105, and 7A, available at Tr. 106-20 (Reconsideration Disability Determination Explanations). In these Reconsideration Explanations, the State agency examiner noted Plaintiff's rotator cuff surgeries and opined Plaintiff's reaching should be "Limited" as to "Left Overhead [and] Right Overhead." Tr. 100, 115.

Regarding her allegation of error as to the limited restriction on reaching, Plaintiff submits the ALJ improperly determined it appropriate to limit Plaintiff only as to overhead reaching despite Dr. Rowland's notation that Plaintiff had a "mild tremor in her hands with significant muscle spasm of the bilateral upper trapezius areas and upper interscapular areas." Pl. Br. 7 (citing Tr. 307). Plaintiff submits that notation by Dr. Rowland "augment[s]" Dr. Korn's earlier opinion that Plaintiff would be limited in "vigorous overhead manipulations" and would be "better suited to manipulations closer to waist level." Pl. Br. 7 (citing and quoting Dr. Korn, Tr. 284). Plaintiff submits the consultative examiners' findings and statements are further supported by Plaintiff's testimony regarding her difficulty reaching, spasms in her shoulder blades, and poor grip strength, examinations in which Plaintiff was found to have decreased range of motion and tenderness, and the x-rays showing a resected distal clavicle. Pl. Br. 7. Plaintiff acknowledges the ALJ referenced

---

[6] In the Listings analysis the ALJ noted Plaintiff's history of bilateral shoulder arthroscopies, but found they were not of listing level severity. Tr. 24. In his report, Dr. Rowland notes that Plaintiff had right-rotatory cuff surgery in 2006 and left-rotator cuff surgery in 2010. Tr. 305. Plaintiff told Dr. Rowland that heavy lifting in her prior manufacturing work necessitated those surgeries. Tr. 305. Plaintiff also advised Dr. Rowland she had stopped her work as a cosmetologist by the end of 2016 "because of so much pain having to hold her arms up long periods of time doing that type work." Tr. 305.

these findings and testimony in the decision but submits such evidence support the findings of the consultative examiners rather than the ALJ's determination that Plaintiff's reaching would be limited as to overhead movements only. *Id.* Plaintiff submits the ALJ has failed to "build a logical bridge" to explain his findings and argues remand is necessary. Pl. Br. 8 (arguing the ALJ must explain how he or she arrives at conclusions and "cannot 'disregard uncontradicted expert opinions in favor of his own opinion on a subject he is not qualified to render.' [*Wilson v. Colvin*, No. 8:15-cv-04185-MGL-JDA, 2016 WL 6471904, at *14 (D.S.C. Oct. 19, 2016), adopted, 2016 WL 6433500 (Oct. 31, 2016)].").

The court disagrees with Plaintiff. Review of the ALJ's decision as a whole indicates he appropriately considered evidence and that his findings, including the RFC regarding reaching, are supported by substantial evidence. Specifically focusing on the ALJ's findings regarding Plaintiff's ability to reach: The ALJ outlined Plaintiff's testimony and her reported difficulties, including "lumps and spasms on the shoulder blades, difficulty reaching, [and] poor grip strength." Tr. 25 (referencing hearing testimony and Function Report-Adult, in which Plaintiff indicated she had difficulty reaching (3E/8, found at Tr. 217). The ALJ then reviewed Plaintiff's medical records, noting she had had bilateral shoulder arthroscopies. Tr. 26. Citing to several medical records, the ALJ noted Plaintiff's physical exams "showed largely benign findings" and that she was "not in acute distress." Tr. 26 (citing exs. 7F/3, 7; 9F/17, found at Tr. 336, 340, 443). The ALJ noted Plaintiff sometimes had a decreased range of motion and tenderness in her neck, low back, and shoulders, as well as in the arms and thighs. Tr. 26 (citing exs. 7F/3, 7, 3F/8, found at Tr. 293, 336, 340). The ALJ specifically cited to x-rays of the shoulders that showed "resected distal clavicle." Tr. 26 (citing exs. 1F/1; 7F/19, found at Tr. 280, 352).

The ALJ specifically discussed the consultative examiners' findings and explained why he accepted portions of their findings and not others. Tr. 26-27. Plaintiff's argument notwithstanding,

16

the record does include expert evidence that supports the ALJ's finding that only overhead reaching should be limited. *See* Tr. 100, 115 (December 2017 reports by State Agency experts). The ALJ discussed these reports and gave some weight to them, including the manipulative restrictions. Tr. 27. Further, while Plaintiff correctly notes that consultative examiner Dr. Rowland noted Plaintiff had "significant muscle spasm" in her upper trapezius and upper interscapular areas and tenderness in her arms, Dr. Rowland also found Plaintiff to have a normal range of motion in her shoulders, elbows, wrists, thumbs, and fingers with strength and grip at 5/5. Tr. 306-07. Significantly, Dr. Rowland offers no opinion as to exactly what sort of functional abilities Plaintiff has in her upper extremities. And, while Dr. Korn's pre-onset-date consultative examination indicated Plaintiff would "appear to be better suited" to manipulations "closer to waist level," Tr. 284, the ALJ discussed Dr. Korn's findings, adopting only those related to overhead reaching, explaining any additional manipulative restrictions would be too restrictive in light of Plaintiff's ADLs and her "largely stable physical functioning noted throughout the record." Tr. 26, 27.

The ALJ considered the medical evidence, including the evidence pointed to by Plaintiff, and found limitations as to overhead reaching were appropriate. The ALJ concluded his RFC analysis by explaining:

> Given the foregoing, I find that the residual functional capacity assessed herein is appropriate. Overall, the evidence generally does not support the alleged loss of functioning. First, aside from episodically occurring abnormal clinical presentations, physical and mental status exams showed largely benign findings. Second, the claimant engages in fairly robust activities of daily living, suggesting that she is not as limited as alleged. Third, the record does not contain any disabling limitations by a treating medical source. I find that any limitations arising from the claimant's impairments are accounted for sufficiently in the residual functional capacity.

Tr. 27. With this conclusion, buttressed by the preceding pages of detailed discussion and analysis of medical records, opinions, and Plaintiff's complaints and ADLs, the ALJ has shown that he "identif[ied] evidence that supports his conclusion and 'buil[t] an accurate and logical bridge from

[that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Further, the ALJ properly assessed opinions, including Dr. Korn's opinion, in keeping with applicable regulations and the record. *See* 20 C.F.R. §§ 404.1527(c)(3),(4); 416.927(c)(3),(4) (providing that supportability and consistency with the record as a whole are relevant factors in weighing medical source opinions).

Although Plaintiff argues the cited medical evidence should support a more restrictive limitation on reaching, the question before the court is not whether evidence may support a different result. Rather, the question is whether the RFC as determined by the ALJ is supported by substantial evidence. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). The court does not reweigh the evidence. *See Johnson v. Saul*, No. 5:20-cv-47-KDW, 2021 WL 717250, at *10 (D.S.C. Feb. 24, 2021) ("Even if the evidence highlighted by Plaintiff could support a different result, the court's role is not to second-guess the ALJ's findings.") When there are two reasonable views of the conflicting evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not reach the RFC reached by the ALJ here in view of the totality of the evidence. Based upon the foregoing, substantial evidence supports the ALJ's RFC.

As set forth above, the ALJ explained how the objective evidence he cited supports his RFC assessment. The Fourth Circuit has clarified that while the RFC assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusions, there is no particular language or format to follow so long as it permits meaningful judicial review. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Here, the ALJ has satisfied that requirement by discussing the medical findings made throughout Plaintiff's treatment history. *See* Tr. 29-32. The

predominant issue is whether there is substantial evidence to support the ALJ's decision that Plaintiff retains the RFC to perform basic work activity. The court finds that the ALJ evaluated the medical evidence of record and, based on the evidence as a whole, he assessed Plaintiff's RFC. Accordingly, the ALJ's RFC assessment regarding Plaintiff's capabilities is supported by substantial evidence. *Ladda v. Berryhill*, 749 F. App'x 166, 173 (4th Cir. 2018) (finding remand unnecessary when the ALJ assessed the plaintiff's capacity to perform relevant functions and when the record in the case was adequate).

   2. Step Five: allegations regarding unresolved conflict between VE's testimony and DOT and Selected Characteristics of Occupations ("SCO")[7]

   Plaintiff's other allegation of error concerns the ALJ's Step Five analysis. At Step Five, the Commissioner has the burden "to prove . . . the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's [RFC], age, education, and work experience." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). The ALJ primarily uses the DOT to determine "whether sufficient other work exists for the claimant in the national economy." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). ALJs may call upon VEs for "complex vocational issues." Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000). The VE's testimony should be consistent with the information provided in the DOT. *Id.* Occasionally, however, the VE's testimony and the DOT are inconsistent, and the ALJ is required to ask the VE if the testimony conflicts with the DOT. *Pearson*, 810 F.3d at 207–08. "The ALJ independently must identify conflicts between the expert's testimony and the [DOT]." *Id.* at 209. If the VE's testimony

---

[7] The SCO is a companion to the DOT that lists the specific functional requirements for specific DOT occupations. *See* SSR 00-4p, 2000 WL 1898704, at *1 (referring to "information in the [DOT] including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO).").

"appears to conflict with the [DOT]," the ALJ has a duty to "obtain a reasonable explanation for the apparent conflict." *Id.* at 208 (quoting SSR 00–4p, at *4). "An ALJ has not fully developed the record if it contains an unresolved conflict between the expert's testimony and the DOT. Nor has the ALJ fulfilled this duty if he ignores an apparent conflict because the expert testified that no conflict existed." *Id.* at 210.

Here, Plaintiff argues that the ALJ failed to resolve conflicts between the VE's testimony as to jobs that someone with Plaintiff's RFC could perform and the DOT and SCO's descriptions of the jobs provided by the VE. Specifically, Plaintiff argues the ALJ failed to resolve conflicts as to the *type and frequency* of reaching the jobs could require. Pl. Br. 9-13. The Commissioner counters that the ALJ adequately addressed issues regarding reaching with the VE and the decision is supported by substantial evidence. Def. Br. 13-16.

The VE found Plaintiff had the RFC to perform sedentary work with various limitations, including the limitation to *occasional overhead reaching bilaterally*, Tr. 25; as detailed above the court finds that limitation on reaching is supported by substantial evidence. In conducting his Step Five analysis, the ALJ found the following:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as inspector (DOT 726.684-050, sedentary, unskilled, SVP 2 - 362,000 jobs nationally), circuit board assembler (DOT 726.687-038, sedentary, unskilled, SVP 2 - 434,000 jobs nationally), and call up operator (DOT 237.687-186, sedentary, unskilled, SVP 2-726,000 jobs nationally).
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is generally consistent with the information contained in the DOT. With respect to his testimony regarding climbing ladders, ropes, or scaffolds versus climbing ramps and stairs; *overhead reaching;* exposure to hazards; and absenteeism, *the vocational expert relied on his knowledge, training, and experience.*
>
> *Based on the testimony of the vocational expert,* I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Tr. 28-29 (emphasis added). These jobs listed in the decision are taken from the VE's testimony

at the administrative hearing. *See* Tr. 58. As detailed in the hearing-testimony summary above, the

ALJ and VE had the following exchange specifically regarding the reaching limitation:

> Q [ALJ]: Anything else different [regarding the DOT]? Is reaching—is it just
> general reaching, or does it cover—I don't think it covers laterally in front, or
> overhead, right, in the DOT?
> A [VE]: It does not.
> Q: Okay. Is that based on your experience?
> A: It is. I believe these jobs are performed at a work bench, and, *so they would not
> require overhead reaching.*

Tr. 59 (emphasis added). The ALJ also asked the VE whether the "call-up operator" was the same

as the job known as a "call-out operator." The VE indicated, "I believe the tasks are the same; it's

very similar, Your Honor." Tr. 58-59.

Plaintiff submits the ALJ did not take his reaching-discussion with the VE far enough

because he did not inquire as to the *frequency/amount* of reaching that might be involved.

According to Plaintiff, a DOT/SCO requirement of anything more than occasional reaching

necessarily would be fatal to the ALJ's Step-Five decision. The court disagrees and finds the on-

record discussion the ALJ and VE had concerning reaching requirements provides the necessary

clarification and provides substantial evidence for the ALJ's decision, including the RFC limiting

Plaintiff to occasional overhead reaching bilaterally.

This analysis requires specific consideration of the jobs the ALJ and VE identified as jobs

someone with Plaintiff's RFC could perform. In the VE's testimony and the ALJ's decision, one

of the jobs Plaintiff would be able to perform is that of an inspector (DOT 726.684-050, sedentary,

unskilled, SVP 2 - 362,000 jobs nationally). The DOT includes the following potentially relevant

information regarding that of 726.684-050, Film Touch-up Inspector: the position is listed as

"Benchwork Occupation[]"; Sedentary; SVP level 1; and lists it requires reaching "Constantly-Exists 2/3 or more of the time." DICOT 726.684-050 (G.P.O.), 1991 WL 679601.

Plaintiff submits that the requirement of "constant" reaching indicates a harmful unresolved conflict with the ALJ's finding that Plaintiff is limited to occasional overhead reaching bilaterally. Plaintiff acknowledges the ALJ discussed with the VE the "conflict regarding the delineation of the types of reaching," *i.e.*, overhead as opposed to other types. Pl. Br. 13. Plaintiff argues, though, that the ALJ erred by not exploring with the VE the "discrepancy between the frequency of the reaching required for the jobs and the maximum RFC." *Id.* Plaintiff's suggestion would create more of a requirement on the ALJ than the applicable regulations impose.

By restricting *only* overhead reaching, bilaterally, the ALJ plainly included *no* type of restrictions on other types of reaching. Plaintiff seems to argue it was error for the ALJ not to expressly indicate the frequency of the non-overhead reaching that would be permitted. The court disagrees. Here, the ALJ recognized the need to clarify with the VE what the *overhead* reaching requirements of the jobs would be because the DOT did not expressly differentiate between overhead reaching and other types of reaching. This logically follows because the applicable RFC imposed occasional limitations to the overhead reaching capacity. The VE's response, based on his expertise and experience was that the jobs were benchwork-type jobs and required *no* overhead reaching. Because the ALJ determined there was no need to limit other types of reaching in any manner, there was no further conflict to be resolved. In other words, whether the DOT imposed "frequent," "constant," or "occasional" limitations on non-overhead reaching was simply not a relevant consideration.

The ALJ did what he was required to do: note the DOT's limitation in describing the types of reaching involved in various jobs and discuss with the VE what the overhead-reaching requirements would be in the identified jobs. Having been satisfied the identified jobs would

require no overhead reaching, the ALJ was under no regulatory obligation to inquire further as to what the frequency of non-overhead reaching might be. In so finding, the court has considered Plaintiff's reliance on *Pearson v. Colvin*, 810 F.3d 204, and *Hill v. Berryhill*, No. 6:18-935-BHH-KFM, 2019 WL 2746278 (D.S.C. Jun. 14, 2019), *report and recommendation adopted*, 2019 WL 2743888 (Jul. 1, 2019). In both of those cases, the courts found unresolved conflicts that required remand because the ALJ had not had specific-enough discussions with the VE to discern whether the claimant could perform the jobs in view of the DOT/SCO's limitations on reaching. However, in those cases the ALJ had not sufficiently discussed with the VE the conflicts regarding reaching and did not also explain how he resolved the apparent conflicts. As the Fourth Circuit noted in *Pearson*,

> Deciding that the vocational expert's testimony apparently conflicts with the [DOT] here does not mean that an ALJ must find Pearson, or any other claimant with this limitation, unable to perform these jobs. Rather, it simply means that the ALJ and the expert should address exactly *what form of reaching the stated occupations require and whether the claimant can fulfill those requirements.*

810 F.3d at 211 (emphasis added); *see Hill*, 2019 WL 2746278, at *5-6 (quoting this excerpt from *Pearson*). In *Pearson*, the court found remand necessary because the identified job required "frequent reaching," and the ALJ had not "elicit[ed] an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching [which would have run afoul of the occasional overhead reaching limitation]." 810 F.3d at 211. In *Hill*, the court found remand necessary because it was "unclear to what extent the type and frequency of reaching was considered by the vocational expert in straying from the DOT." 2019 WL 2746278, at *6. The *Hill* VE had acknowledged that the DOT did not delineate between overhead reaching and other reaching; however, there was no further discussion explaining how the VE's testimony could be reconciled with the DOT in view of the discrepancy. Here, in contrast, the VE testified about the specific reaching demands of the jobs by explaining that the identified jobs were primarily

performed at a work bench and would not require overhead reaching. Tr. 59. With this discussion and clarification, the frequency of reaching became immaterial because there was no discrepancy that was required to be discussed. The ALJ fulfilled his duty of resolving potential conflicts with the DOT and explained how such conflicts were resolved. The ALJ's determination that Plaintiff could perform the inspector position is supported by substantial evidence.

The ALJ and VE also identified two other jobs that Plaintiff could perform: circuit board assembler (DOT 726.687-038, sedentary, unskilled, SVP 2 - 434,000 jobs nationally), and call up operator (DOT 237.687-186, sedentary, unskilled, SVP 2- 726,000 jobs nationally). Plaintiff points out conflicts as to each of these two positions. The job of circuit board assembler is at light—not sedentary—exertion. The Commissioner concedes this in his brief and does not argue that it need be considered further. Def. Br. 14, n.4 ("The Commissioner concedes that a conflict exists with respect to the position of circuit-board assembler because the DOT indicates the job is light, not sedentary. *See* 1991 WL 679639."). Further discussion of the circuit board assembler position is unnecessary, then.[8]

Plaintiff also ascribes error to the job of call up operator (DOT 237.687-186, sedentary, unskilled, SVP 2- 726,000 jobs nationally). Plaintiff correctly notes—and the Commissioner concedes—that the DOT contains no such position as "call up operator" and there is no such DOT number as 237.687-186. The Commissioner goes on to defend the "call up operator" position by noting the exchange between the ALJ and VE that "call up operator" would be "very similar" to

---

[8] To the extent Plaintiff seeks remand solely on the basis of the concession that the circuit board assembler position would not be available, however, the court does not agree. So long as substantial evidence supports one of the positions identified by the Commissioner at Step Five, remand is not necessarily required. *See, e.g.*, *Melendez v. Saul*, No. 419CV00127BHHTER, 2020 WL 2100858, at *8 (D.S.C. Apr. 13, 2020) (noting error as to certain positions identified by the ALJ and VE but collecting cases and finding that "such error is harmless here, where another job category remains"), *report and recommendation adopted,* No. CV 4:19-127-BHH, 2020 WL 2098195 (D.S.C. May 1, 2020).

that of "call out operator" and that a call-out operator requires only occasional reaching. Def. Br. 14-15. While there may be an argument to be made based on the testimony at the hearing, the court is not convinced. Although the ALJ and VE did reference the call out operator position, the equivocal testimony of the VE that he believed the positions to be "similar" coupled with the fact that the DOT number given for that position was incorrect (and, in fact, does not seem to correspond to any specific job), suggests substantial evidence does not support the decision as to the "call-up" (or "call-out") position as supporting the Step Five analysis. Even so, any error associated with the call-up/call-out position is harmless given the inspector position that was identified and is supported by substantial evidence. *See, e.g.*, *Melendez v. Saul*, 2020 WL 2100858, at *8 (noting one supportable job category is sufficient), *report and recommendation adopted,* 2020 WL 2098195; *see also Richardson v. Berryhill*, 5:17-cv-173-RJC-DSC, 2019 WL 1354042 at * 4 (W.D.N.C. March 25, 2019) (citing *Guiton v. Colvin*, 546 F. App'x 137, 142 (4th Cir. 2013), and noting that because claimant "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act."). This allegation of error is dismissed.

III.    Conclusion

    The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

February 28, 2022                                          Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge